## HANCOCK et al. v. COSSETT et al.

*(Circuit Court, W. D. Tennessee. September 18, 1889.)*

1. DEEDS—REFORMATION—EQUITY—JURISDICTION.
    Equity has jurisdiction of a suit to set aside a settlement and reform a deed given in pursuance thereof, because of mutual mistake, or fraud on the part of the grantor in including therein land to which he had no title, though there may be a concurrent remedy at law on the covenants in the deed. HAMMOND, J., dissenting.
2. BOND FOR TITLE—PAROL EVIDENCE TO VARY.
    Testimony to show that the written contract expressed in a title-bond was altered or varied by parol agreement is inadmissible.

On Application for Rehearing. No former opinion was filed.

*Francis Fentress, T. K. Riddick,* and *F. A. Mayo,* for plaintiffs.

*H. C. Moorman,* for defendants.

JACKSON, J. It is not deemed necessary to go into any general review of the pleadings and evidence in this case. The object of the original and amended bills is to set aside a settlement made between the complainant Hancock, administrator of J. J. Pulliam, deceased, and the defendant Cossett, in January, 1884, to reform a conveyance made by said Cossett to the heirs of said Pulliam at the time of and in pursuance of said settlement, because said conveyance included certain lands which were neither sold by the vendor nor purchased by the intestate of the grantees, and to recover of said Cossett moneys improperly paid him by said administrator and his intestate. These matters of relief are sought upon allegations of fraudulent concealment and misrepresentation of material facts by said Cossett in procuring said settlement, and in his wrongfully and knowingly including in his deed to the heirs of Pulliam certain parcels of land comparatively worthless, which their intestate had not purchased, and obtaining payment for the same; and upon the further allegation of mutual mistake, both of fact and of law, in respect to said tract of land improperly included in said Cossett's deed. The alleged overpayments made to said Cossett by reason of said fraudulent concealment and misrepresentation in procuring said settlement and in the execution of said conveyance, and by reason of the mistake of material facts, are sought to be recovered, with interest. Cossett interposed no objection by way of demurrer to the frame of the bill and to the relief sought, but answered the same, putting in issue the charges on which the equity of the bill was predicated. Proof was taken on both sides upon the issues raised by the pleadings, and upon the hearing of the cause in June, 1889, the presiding judge dismissed the complainants' suit, not upon its merits, as stated by counsel, but upon the ground that complainants had a complete and adequate remedy at law upon the covenants of seisin and warranty contained in the deed from Cossett to the heirs of Pulliam, and that the case as presented by the bill did not properly come within the equitable jurisdiction of this court. Leave was granted complainants to present an application for rehearing, which the presiding judge requested

should be submitted to the circuit judge for his determination. This application for rehearing having now been argued, and, in connection therewith, the cause submitted upon its merits, and this court, having carefully examined the record and the questions presented, has reached and hereby announces its conclusions in the premises as follows, viz.:

1. That the application for the rehearing should be and is accordingly granted. The original and amended bills make, in the judgment of this court, a case for the proper exercise of the equitable jurisdiction of the court. The bill contains clear allegations of fraud in the shape of misrepresentations and concealment of material facts on Cossett's part, and of mistakes affecting the rights of the parties, and seek to have reformed the deed which Cossett executed to the heirs of Pulliam. These grounds of relief are proper matters of equitable cognizance, and sufficient to maintain the jurisdiction of the court over the subject-matter of the suit. The remedy at law is not complete and adequate. If the heirs of Pulliam sued at law upon the covenants in Cossett's deed to them, how could they recover as to the 28.08 acres which it is claimed actually belonged to their intestate, and were improperly included in said deed? While holding under that conveyance, could they at law dispute Cossett's title? But, aside from this, there is no remedy at law to reform that conveyance; but, even if there was a complete remedy at law, it is settled that, where fraud or mistake is the ground of relief, the jurisdiction of a court of equity is not ousted by the concurrent remedy at law. The bill comes within the proper equity jurisdiction of the court, and the complainants were entitled to a hearing and decision upon the merits of the case. The order of June 8, 1889, dismissing complainants' original and amended bill, is accordingly set aside, and a rehearing of the cause granted.

2. Complainants' exceptions to the competency of direct questions 21, 22, 26, and 27, and the answers thereto, in the deposition of A. P. Rose, are sustained to the extent that the statements of said witness, which undertake or purport to show that the terms of the written contract between F. D. Cossett and S. Adams, as contained in the title-bond of the former to the latter, were altered or varied by parol agreement. Direct questions and answers 13 to 18, inclusive, in the deposition of defendant Cossett, are excepted to for the same reason, and said exception is also sustained. So far as said answers undertake to change or vary the written contract expressed in the title-bond to Adams they are incompetent, and are excluded. Complainants' exceptions to questions 16, 17, 22, and 24, and answers thereto, in the deposition of defendant F. D. Cossett, are sustained, and the testimony therein given of conversations, agreements, and understandings had between himself and J. J. Pulliam, deceased, are excluded as incompetent evidence. Complainants' third exception—to question 38, and answer thereto, in deposition of A. P. Rose—is not well taken, and is overruled.

3. The proof establishes that the 28.08 acres described in the amended bill was the property of J. J. Pulliam, deceased; that it never belonged to or was in the possession of defendant Cossett; that it was not covered by his title-bond to said Pulliam; that it was improperly and by mis-

take included in his conveyance of January, 1884, to the heirs of said Pulliam, and the amount paid said Cossett therefor, viz., $336.96, should be refunded by him, with interest thereon from and after August 6, 1873.

4. The proof establishes that by mistake, inadvertence, or fraud the said Cossett included in his conveyance to the heirs of Pulliam 145.75 acres of land which he had in 1866 conveyed by title-bond to S. Adams. This parcel of land was not included in the survey made by Pulliam in his life-time, but was included in the survey made by defendant Cossett after said Pulliam's death, which survey was made without notice to the heirs of Pulliam, was conducted by Cossett in person, who directed the surveyor to cut off from the S. Adams tract, as described in the title-bond of 1866, said 145.75 acres, so as to throw the same into the Pulliam purchase. This *ex parte* proceeding was conducted under suspicious circumstances, and was attended by statements made by Cossett to young Adams, (and which Cossett does not contradict,) which manifested a design and intention of entrapping the agent of the Pulliam heirs into an admission or claim of ownership of said parcel of land, so as to estop them from questioning his right to include said parcel in his deed to them. Following this contrivance to mislead or entrap said heirs, it is established by the preponderance of the evidence and the circumstances of the case that said Cossett represented to complainant Hancock that the Adams title-bond covered only 100 acres, and did not disclose to him or to Beasly the fact that said title-bond embraced said 145.75 acres. Neither Hancock nor Beasly knew what the Adams title-bond covered, and complainant Hancock would not have settled with said Cossett if he had known the facts. Hancock's version of what occurred between himself and Cossett in January, 1884, at the time of the settlement in relation to the Adams title-bond is more satisfactory than the uncertain and argumentative statement given by Cossett. Cossett had recently examined that title-bond, when the survey of 1883 was made by him, and could not have been ignorant of the fact, which he admits in his deposition, that the Adams title-bond covered this 145.75 acres. He claims that the complainants knew this fact, but that is not established by the proof. He had no right to include it in his deed to complainants without a full and fair disclosure of all the facts. This he did not make. The proof is wholly insufficient to show that J. J. Pulliam ever took possession of or claimed said parcel of land as being included in his title-bond. The fact that he did not have it included in his survey made in 1881 is quite significant. Again, 70 acres of said 145.75-acre parcel never in fact belonged to defendant Cossett at any time nor was he ever in actual possession thereof. Said 70 acres lie in the west end of said strip between the Stafford south one-fourth section and Wolf river, and belonged to E. M. Apperson and his vendees. Cossett never had either color of title thereto, or possession, actual or constructive. Others holding title under and through said Apperson had constructive possession thereof. This 70 acres was not embraced in the title-bond to Pulliam, and was improperly, through fraud or mistake on Cossett's part, included in his

deed to the heirs of said Pulliam. Excluding this 145.75 acres, Cossett is liable to the estate of Pulliam for a deficit of 133.97 acres at $12 per acre, making $1,607.64, with interest since August 6, 1873.

5. There was no excess of 11.78 acres, as claimed by Cossett, and for which the complainant Hancock, administrator, paid him in the settlement of January 24, 1884, and the amount paid Cossett on the supposed excess will be refunded by him, with interest from date of settlement, January 24, 1884.

6. The conveyance from Cossett to the heirs of Pulliam—Exhibit E to the original bill—should be reformed so as to exclude from its operation said two tracts of 28.08 and 145.75 acres, respectively. A decree will be entered in conformity with the foregoing conclusions, in favor of complainants and against the defendant F. D. Cossett, and said Cossett will be taxed with the costs of the cause.

HAMMOND, J., (*dissenting*.) It was understood at the time that the argument of the petition for rehearing was directed to be made before the circuit judge, that if he should take a different view of the case, and there should be a disagreement between the judges, the parties were to have the benefit of that fact upon the record. No suggestion was made at the argument before me, I think, that this bill could be maintained as one to reform the deed, but it was urged that it was a bill to set aside a settlement made subsequently to the deed, and evidently contemplated by the deed itself between the parties as to the number of acres conveyed by it,—very much, one might say, as a bill would be filed to surcharge and falsify for fraud an executor's or administrator's settlement or any stated settlement of dealings between parties. It does not seem to me now that the bill can be maintained as one to reform the deed. The deed conveys all of Cossett's lands in a certain location, and by it whatever he had passed, no more no less, and be it more or less, and the amount was to be ascertained subsequently. Now, the proof seems to me to establish that there was a confusion of boundaries and of knowledge as to the Cossett lands, and that whatever mistakes or losses occurred were as much the fault of Pulliam as Cossett. If the vendee allowed lands to which the deed gave him title to be lost by adverse possession of others, that was not Cossett's fault at all, and the parties made the best settlement they could of quantity, and it was paid for by the vendee. If he paid too much, under circumstances not precluding him, he might, in an action for money had and received, or possibly in an action on the covenants of warranty, have recovered the overpayments, but I do not yet see how a bill would lie even to reform the deed. I therefore dissent from this judgment.